May it please the Court, Diane Burley and David Goodwin for Appellant Joseph Ogunrinu. In our briefing, we discussed the fact that the objective reasonableness of the officer's actions towards Mr. Ogunrinu is a question of fact and that the party's testimony conflicts as to those facts. We laid out in the reply brief each instance where there was a conflict. We also discussed the fact that the judge, the district court judge in a couple of instances actually said that the statements of Mr. Ogunrinu were self-serving and that seems to me to be a credibility determination that basically begs the question that this is why this case should go to trial and why summary judgment was not appropriate. The Monell claim, the police chief submitted a declaration and there was no direct testimony to contradict that but I think that you can show a pattern or practice by the actions of officers that are contrary to the policies and procedures of the police department. I don't know how else you would show that and the fact that their policies are in place doesn't mean that they're being enforced. The only other thing we wanted to add is that we did cite the Martinez case which seems to say that forms should not be exalted over substance and that if there were problems with the moving papers in the lower court and the way the evidence was presented that certainly the deposition testimony was lodged with the court. Certainly there was ample evidence to Lodge with the court or did you provide specific page and line citations? I'm sorry, I think, let me back up. The only thing that was lodged I thought were the notices of the fact that the depositions were taken. The depositions were actually lodged with the court. Okay, but then my question is did you go the step further and provide page and line citations with appropriate authenticating declarations of counsel in order to lay the foundation to establish the admissibility of that case? No, no. Isn't that required by the local rules? The local rules require it, but if you look at the Martinez case, the circuit felt it was important that if it wasn't done properly or it wasn't done at all, if there was evidence to contradict the factual contentions of the moving party, that it should look at that. Is there some reason why you didn't do it? Because this is actually becoming a fairly significant problem in high volume courts where counsel don't go the extra step and help our trial judges and the judges on appeal when we're trying to review the record, figure out just where the contested issues of fact are. I'm sure you're familiar with some of the language in our opinions where we talk about the fact that, you know, we're not pigs searching for truffles here in the forest, that we need help from good lawyers to point us to where this evidence is. And as I read the briefs and examined the record, I didn't see that here. And I guess my question for you, counsel, is why not? You're talking about the record below. You're not talking about the record on appeal or a briefing on appeal. I'm talking about the record that was presented in the form that it was presented in to an overworked district judge who is trying to determine whether or not this is an appropriate case for summary judgment. Your Honor, obviously, I did not handle the district court. I'm not blaming you. No, no, of course not. It is, I guess, a concern, if you will, of the practice of some trial lawyers. I don't know why it wasn't done. I find it interesting that this is a continuing problem. I would think it wouldn't be. I don't know why we publish these opinions, but I sometimes wonder whether anyone's reading them. I felt that, you know, it wouldn't – clearly it wasn't done. I'm not going to try to argue otherwise. But it didn't take a lot of investigating for a busy appellate lawyer to find factual contradictions and to lay them out in an appellate brief. It didn't take more than a few steps to do that. So, obviously, the factual conflicts are there. How about just taking each instance? Let's take the first one, which is the March 9, 1999 incident, and tell me exactly what the trial issue of fact is. Okay. Officer Meyer either testified or stated in his declaration that Officer Kittinger told him that he saw Mr. McLaughlin in front of the Perfect Ten market, obviously intoxicated, and that he went in – I'm sorry, Mr. McLaughlin went in, Mr. Ogunrenu sold him more liquor. He left the market. He was detained at some point. I can't remember the exact sequence of events. And then Officer Meyer went in, arrested Mr. Ogunrenu for the Business and Professions Code violation, the California Business and Professions Code, handcuffed him and placed him under arrest. Mr. Ogunrenu's deposition testimony was that Mr. McLaughlin was not – oh, and there was an argument between Officer Meyer and Mr. Ogunrenu as to whether or not Mr. McLaughlin was intoxicated. Mr. Ogunrenu's testimony was that Mr. McLaughlin had some kind of disability which caused him to have a balance problem or a limping problem, that he had been drinking but he wasn't intoxicated, and that he came in and was sold some beer, that Officer Meyer and Officer Kittinger both had cased the store before Mr. McLaughlin came in, that they then came back in and accused Mr. Ogunrenu and handcuffed him too tightly, and he complained that the handcuffs either hurt or were uncomfortable, and they – Officer Meyer said they're supposed to hurt, and I think that's basically all the factual conflicts. Clearly there's a conflict there, and if, in fact, Mr. Ogunrenu's version of events is believed by the jury, then I think you have established unreasonable conduct on the part of Officer Meyer. What about the investigation? I wanted to say one more thing about the March 9th incident, if I may. There's actually an excerpt in the transcripts during one of the hearings where counsel for the city acknowledges that there may be a tribal issue of fact there. So there – I mean, I don't know if that's real significant, but there was some acknowledgement that that might be a problem for the city. As to what issue? He didn't specify. He just said – actually, what he said was the other two incidents didn't have an issue, but that incident might. So, for what it's worth. The failure to investigate, Officer Lanzillo said that he conducted a proper investigation and took a proper report and turned it over to somebody else to investigate. It was a pretty conclusory statement that he made. An inadequate investigation wouldn't give rise to a constitutional violation in any event, unless there was some other constitutional violation involved, would it? Well, I think it might, Your Honor. If we assume that the police conducted, for lack of a better term, a softball investigation where they went through the motions and didn't really pursue the leads, it didn't – we all know that this can be done. We all know that something can be kind of – But that's not the question, Judge Wright. No, I understand that. I'm getting to that. The question is, why doesn't Gomez v. Whitney control on this issue? You've got to show something else. The mere allegation, as you put it, of an inadequate investigation isn't enough under our case. Well, but if you take that together with other incidents that have occurred and Mr. Ogarino's claim that the police are constantly harassing him, I think that in context, you can say, okay, and on top of everything else, the police – this is an attempted murder and the police didn't pursue this. They didn't do anything other than the bare minimum of what they were supposed to do. I think that that's a constitutional violation. Well, you know, if you look at the facts of Gomez v. Whitney, that's a pretty egregious situation involving basically the death of a juvenile. And we said in that case that no courts have recognized inadequate investigation as sufficient to state a civil right, and there's another recognized constitutional right involved. Can you give me one moment, Your Honor? Sure. Okay. In Gomez, the child died in an accident, and the father alleged due process violation because authorities didn't reopen the investigation. He said it wasn't an accident. He said it wasn't an accident. Because of a conclusory investigation, the police blew it off, which sounds to me an awful lot like what you just said occurred with regard to the shots fired through your client's store window. Your Honor, the only thing I can say in response to that is that the police, according to Mr. Ogarino, were given additional information, wherein Gomez I believe there was not just the bare information about the accident. Your Honor, that the father, two years, even two years after the son's death, still attempted to persuade the police to reopen the investigation. Yeah, he kept persuading, but if you look at the facts of the case, I don't think that there was a record of what he in particular did to persuade them. I think he was, you know, the context of the case was this was a distraught and grieving father and that he wanted, you know, he wanted. For his son's death. Yeah, he wanted justice. In this case, there was information that just clearly wasn't pursued, and I think that's a distinction. And where in the record was that provided to the district court? In the district court record. Right. It was provided in the moving, in Mr. Ogarino's moving papers. Okay. Okay, in the. So we're back to the same problem. Same problem. There wasn't a specific citation to it to the district court. Right. Deposition was simply lodged. Right. But in this court, in our briefing, we showed, we took the portions of the deposition cited that Mr. Ogarino talked about. But our case law says it has to be at the level of the court that's going to decide it. I understand that, Your Honor, but the Martinez case clearly says that you, that if a local rule isn't followed, but there is clearly a factual conflict that should not warrant summary judgment, that the court should look at that. Yeah, we understand the Martinez argument. Yeah. What's the tribal issue on the town hall meeting? Town hall meeting is basically an issue of inferences. According to Officer Lanzillo, he was working security at the meeting. Everybody was passing through the metal detector. Mr. Ogarino passed through the metal detector without incident. And he was talking, Officer Lanzillo was talking to the security guard. At some point, the security guard wanted Mr. Ogarino, and then Mr. Ogarino apparently got very angry, and they had a verbal confrontation, and Officer Lanzillo asked him to leave, and this was not harassment. Mr. Ogarino's position is that he walked through the metal detector, made eye contact with Lanzillo. Lanzillo realized who he was. Lanzillo went to the security guard and said something to him, and the next moment the security guard was wanding Mr. Ogarino, and Mr. Ogarino felt that that was harassment and discrimination. What is unreasonable about a wand search at the entrance to a government building? There's nothing unreasonable about a wand search. There were numerous authorities cited to the court that wand searches are per se reasonable. What was unreasonable was that nobody else was wanded, that there was no apparent reason for the wanding, that the metal detector did not go off, and that the wanding occurred immediately after Officer Lanzillo had a word with the security guard. That was what was unreasonable. Okay, and so the inference that that was unconstitutional that should be drawn from fact is what? What's the unconstitutional inference? In this case, it was racial animus that motivates. Is there any evidence of that? As to this specific incident, no. If you take a circumscribed view of each incident, probably not, but if you look at the totality of the circumstances and the history, yes. Okay. Okay. I don't think I have anything further unless the Court has further questions. Thank you. Okay. May it please the Court. Donovan Kokos on behalf of the city defendant and the officer defendants. This case demonstrates why a summary judgment motion must be decided based on materials that are in the record properly authenticated and at least arguments made for their admissibility. In this case, as in all summary judgment cases, I mean, to defeat summary judgment, the appellant was required to provide affidavits or other sources of evidence that laid out specific facts showing that there was a genuine issue for trial. That's the Celotex standard, and consistent with that standard, this Court in Keenan v. Allen and Orr v. Bank of America has held in one form or another that the district court isn't required to scour the record looking for specific triable jury facts. And in the Orr case, the Court set forth over many pages in great detail how the evidence must be authenticated and arguments for its admissibility made. Ms. Burleigh makes a good argument that she went through the record fairly easily and identified a handful of crucial facts that she contends raise a triable issue. Why shouldn't we be influenced by that? Well, Your Honor, I actually did the same thing. I'm prepared to go through each issue and take what I think are the undisputed facts and show that they don't lead to any triable issue on each of those particular issues. I mean, I think I'd point out at the start, though, that the Martinez case, which appellants are citing, does mention that a prison inmate had not filed an opposition to a summary judgment motion and that his deposition was already in the record because a summary judgment motion brought against his case had failed in the past. And on the basis of his deposition already in the record and other evidence, the Court then was required to at least find a triable issue. the officers, when moving for summary judgment, the second time had cited those materials. And looking at those materials, which presumably, we don't know for sure, but they must have been properly authenticated and arguments for their admissibility made, presumably there were triable issues. In this case, I mean, nothing in Martinez stands for the proposition that uncorroborated, self-serving deposition testimony alone could create a genuine issue of material fact. And for the first time in appellant's reply brief, that's what we're sort of hit with, 733 pages of excerpts of record and then specific arguments that only go to Mr. Ogunrino's deposition testimony. You know, I'd say, as to the first point, you know, there are no specific facts that establish, even looking at the deposition testimony, that officers lack probable cause to arrest Mr. Ogunrino on suspicion of selling alcohol to an obviously intoxicated customer. At the outset, I mean, it's important. I suppose that's relatively clear. The arguable, triable issue of fact would be over, I suppose, the handcuffing. Okay. Then in that case, you know, I can skip to that issue if the Court would like. Similarly, I mean, the appellant's only response, at least below to the summary judgment motion, was to point to his uncorroborated statement that he told the officer the handcuffs were uncomfortable and that the officer said handcuffs are not supposed to be comfortable. I was unable to find any authority for the proposition that uncomfortable handcuffing alone would lead to a constitutional deprivation or excessive force. But even if his deposition could have raised a genuine issue on this fact, it doesn't do so. You know, he seems to concede anyway that summary judgment would have been proper unless the record contained objective evidence of injury. Here, for the first time, the appellant cites his deposition testimony for the proposition he sustained nerve injury to arrest. That's at page 9 of the reply brief. But his deposition doesn't support that proposition at all. The Court looks at further excerpts of record 29 through 33. Appellant admits that no one ever told him he had any nerve injury to his wrist and admits that his wrist had been injured prior to this. So in the end, the deposition testimony only contains the appellant's belief that he has nerve damage, but that's belief that's not been substantiated by a shred of evidence other than his uncorroborated say-so on that. And I can go through each issue if the Court would like, but in each case the appellant's deposition testimony sort of belies that there could be any tribal issue of fact. You know, I said, what I would go back to actually is appellants on page 3 of his reply brief has a block citation to Carmen v. San Francisco, 237 F. 1026. On reading the block quotation, I found the appellant had omitted a portion of that statement of what that case held. And what was omitted states that a plaintiff's belief that a defendant acted from an unlawful motive without evidence supporting that belief is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on summary judgment, evidence must be competent. Carmen in that case failed to show personal knowledge. It's not enough for a witness to tell all he knows. She must know all she tells. If the district court correctly concluded in that case there was no evidence in the deposition or anywhere else in the summary judgment papers of any basis in personal knowledge for the plaintiff's subjective belief about the defendant's motive. That's really what this case is about. This is about Mr. Ogunrenu's belief that he was singled out for some reason at the town hall meeting. But Mr. Ogunrenu admits in his deposition that he doesn't know why the officer decided to want him. He couldn't hear the conversation between one of the officer defendants and the security guard who wanted him. On that basis, he just has not raised a triable issue based on not just want screening per se, but that the want screening was done for some racial bias. There just isn't anything in the record to support that. Unless the court has further questions, I'd like to reserve the balance of my time for rebuttal. Well, there isn't any. Oh, all right. This is your one and only. But that's okay. I don't think we have any questions. Okay. Thanks. Ms. Burleigh? Just very briefly, respondent, I mean, excuse me, appellee discusses the fact that Officer Meyer's actions were justified, on the March 9th incident were justified as to probable cause. I believe we discussed this in the reply brief that if, in fact, his actions were as Mr. Oganrino said they were, that that shows a lack of probable cause. But I thought you just told us a few minutes ago that your client testified that the person was, in fact, smelling of alcohol and might have been stumbling from some reason that was unrelated to intoxication. Why wouldn't that still be sufficient to establish probable cause for the arrest? I think what my client said was that Mr. McLaughlin had been drinking, but he wasn't intoxicated. I understood that. But what I'm asking, I guess, is simply looking objectively from the officer's standpoint, as we're required to do under saucier versus Katz, why wouldn't the fact that your client admits that the guy was stumbling, although he thought it might have been Parkinson's disease or whatever, plus the fact that he had been drinking be sufficient to allow a reasonable officer to conclude, perhaps incorrectly, as it might later turn out, but nonetheless objectively conclude that there was probable cause that he'd just sold alcohol to an intoxicated person? Your Honor, I really don't have an answer to that. I think, again, you have to take this particular incident in the context of the entire history before, between Mr. Oganrino and the police. I guess what troubles me with regard to the March 9th incident is, I guess, the point that Mr. Kokos was making, and that is that if you look at what your client says, it doesn't establish an issue or a material fact that is in dispute on the probable cause issue. With his admissions, he can't then say, but nonetheless the officer acted improperly because there was no probable cause. That's the conclusory nature that is simply not supported by the non-contested factual issue. All I can say, Your Honor, is that I think this incident needs to be looked at in the context of the totality of the circumstances, and if, in fact, the officers were looking to set him up, set Mr. Oganrino up, I think that that's probably not probable cause and that's probably not objectively reasonable, and that certainly is Mr. Oganrino's version of events as to what happened. I hear the conclusion, but I guess what troubled Judge Wilson and what's troubling me on this record is you've got to come up with some facts from which a reasonable inference can be made that leads to that conclusion, and I'm looking for some help here from you, and I don't see those facts. I hear the conclusion, but you've got to have admissible evidence in order to make the contest, and I don't see the contest. Your Honor, I really think the record speaks for itself. There just isn't much else I can say about it. I understand you're bound by the record. I'm bound by the record, but again, I just want to emphasize that you really need to look at this case in context. As to the excessive force segment of the March 9th incident, I believe that there is authority in the briefing that excessive force, what constitutes excessive force, is a question of fact. I didn't find anything either that said that tight handcuffing, too tight handcuffing was excessive force, but clearly if excessive force was used, that is a question of fact. As to the nerve injury, I don't think that there's any more reason that Mr. Ogunrinu's statement that he has nerve injury, and if he had existing nerve injury, it was under straightforward tort law. If he had nerve injury that was aggravated, that's certainly a viable claim of damages. And if that's characterized as it was by Judge Wilson as self-serving, the only thing I can say in response to that is that the police chief's declaration was also self-serving. I think this self-serving issue is very troubling to me. The jury is entitled to decide whether these statements are self-serving or not. The jury is entitled to look at Mr. Ogunrinu's demeanor and look at the demeanor of the officers and come to its own conclusions. The other thing that Appelli brought out was that Mr. Ogunrinu's subjective belief that he was being singled out was not sufficient on the October 12th incident, the town hall incident, was not sufficient to show a factual dispute. And I think that that kind of is too circumscribed. I think that there is an inference there with the history that Mr. Ogunrinu had with the police department and with the city for him to go through the metal detector and then watch the officer suddenly have a word with the security guard and then suddenly immediately he's wanted. I think that that's more – it may be inferential, but I don't think it's speculative. And with that, I have nothing further. Thank you. Thank you, Counsel, for your argument. The matter just argued will be submitted. The court will stand at recess for the day. All rise. The Court of Appeals has been adjourned.
judges: Wallace, Rymer, Tallman